# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Estate of William A.    :
O'Connor, Jr., Deceased    :
   :
Appeal of: Judith O'Connor,    :   No. 2119 C.D. 2015
Administratrix of the Estate of William  :   Argued: April 13, 2016
A. O'Connor, Jr., Deceased    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION BY JUDGE BROBSON**         **FILED: June 8, 2016**


The Estate of William A. O'Connor, Jr., by and through Judith A. O'Connor as Administratrix (Estate), appeals the determination of the Court of Court of Common Pleas of Westmoreland County, Orphans' Court Division (Orphans' Court), which dismissed in part and granted in part Estate's Petition for Citation, challenging the Pennsylvania Department of Revenue's (Revenue) calculation and assessment of inheritance tax under the Inheritance and Estate Tax Act (Act).[1] The only issue before the Court is whether the Orphans' Court erred as a matter of law in holding that the children of William A. O'Connor, Jr. (Decedent) failed to renounce timely their interests in the Estate under Section 2116(c) of the

---

[1] Act of March 4, 1971, P.L. 6, added by Act of August 4, 1991, P.L. 97, *as amended,* 72 P.S. §§ 9101–9196.

Act, 72 P.S. § 9116(c). Our standard of review of this purely legal issue is *de novo*. For the reasons that follow, we affirm the Orphans' Court's determination.[2]

Decedent died intestate—*i.e.*, without any will or other instrument designating disposition of his property upon death—on November 18, 2008. At that time, he was survived by his wife Judith A. O'Connor ("Mrs. O'Connor") and two then-minor children. The Westmoreland County Register of Wills appointed Mrs. O'Connor as the personal representative (a/k/a Administratrix) of the Estate on January 14, 2009.

In 2010, Mrs. O'Connor initiated a wrongful death and survival action in the Court of Common Pleas of Westmoreland County against medical professionals and related entities that provided care to Decedent. In April 2014, the remaining defendants offered to settle the lawsuit for $2.6 million. Mrs. O'Connor tentatively accepted the settlement offer, pending court approval. *See* Section 3323 of the Probate, Estates and Fiduciaries Code (Code), 20 Pa. C.S. § 3323 (requiring court approval of settlement of survival actions). Thereafter, on May 14, 2014, Decedent's surviving children, then both over the age of eighteen, each filed a document titled "**DISCLAIMER**" with the Westmoreland County Register of Wills, which provided, in relevant part: "I hereby disclaim any interest that I may have as an intestate heir of William A. O'Connor, Jr., including the right to be a wrongful death heir of William A. O'Connor, Jr." (Reproduced Record (R.R.) 10a, 11a.)

---

[2] Two orders comprise the Orphans' Court's determination in this matter. The first is dated July 30, 2015. The second is an amending order, dated October 5, 2015.

In June 2014, Mrs. O'Connor filed a Petition for Leave to Settle Death Case under the docket of the wrongful death and survival action. In that petition, Mrs. O'Connor proposed to apportion 75% of the settlement ($1.95 million) to her wrongful death claim and 25% of the settlement ($650,000) to the Estate's survival claim. Revenue did not object to this proposal. The court approved the settlement, including the apportionment, by order dated June 24, 2014.

Pursuant to Section 3301 of the Code, 20 Pa. C.S. § 3301, on August 18, 2014, Mrs. O'Connor, as Administratrix, filed with the Westmoreland County Register of Wills a verified inventory of the Estate's assets. She identified as personal property of the Estate only the proceeds of the settlement attributable to the Estate's survival claim—$650,000. (R.R. 62a.) She also filed an inheritance tax return. (R.R. 39a-42a.) In the return, Mrs. O'Connor indicated that no tax was due because she was Decedent's sole intestate heir. Under Section 2116(a)(1.1) of the Act, the inheritance tax rate for transfers of property to a surviving spouse is 0%. Revenue, however, refused to accept the return. Instead, on or about January 27, 2015, Revenue issued a Notice of Inheritance Tax Appraisement, Allowance or Disallowance of Deduction and Assessment of Tax (Appraisement), claiming that inheritance tax was due and owing on the surviving children's intestate share of the survival claim settlement, which, under Section 2116(a)(1)(i) of the Act, is taxed at a rate of 4.5%. (R.R. 60a-61a.) In doing so, Revenue took the position that Decedent's surviving children did not timely renounce their interests in the Estate under Section 2116(c) of the Act. Revenue recalculated the Estate's inheritance tax liability, including interest and penalties, as $8,516.27.

In the Petition for Citation filed with the Orphan's Court, the Estate challenged Revenue's inheritance tax assessment on two grounds: (1) Decedent's

3

surviving children filed timely disclaimers, renouncing their interests in the Estate, under the future interest exception in Section 2116(c) of the Act; and (2) Revenue erred in calculating the amount of tax due by including in its calculation of Estate assets available for distribution to heirs an IRA for which Decedent had designated Mrs. O'Connor as the sole beneficiary. Ruling on Revenue's preliminary objections to the Petition for Citation, there being no genuine issues of material fact, the Orphans' Court held that Decedent's children did not file timely renunciations under Section 2116(c) of the Act and, therefore, inheritance tax was due on their intestate shares of the Estate's assets. The trial court, however, refused to dismiss on preliminary objections the Estate's challenge with respect to the IRA. Subsequently, Revenue acknowledged its error with respect to the IRA and agreed to reduce the amount of tax due to $7,714.79.

Where an individual dies intestate, assets of the estate are distributed according to Chapter 21 of the Code, 20 Pa. C.S. §§ 2101-2110. Under the Code, a surviving spouse with surviving issue shared with the decedent is entitled to "the first $30,000 plus one-half of the balance of the intestate estate." 20 Pa. C.S. § 2102. If one or more of the surviving issue, however, are not also issue of the surviving spouse, then the surviving spouse is entitled to one-half of the intestate estate. *Id.* The portion of the estate that does not pass to the surviving spouse, or the entire estate if there is no surviving spouse, passes to any surviving issue in equal shares. *Id.* §§ 2103, 2104. In the challenged Appraisement, Revenue allocated the entire value of the IRA to Mrs. O'Connor as the designated beneficiary and half of the remaining value of the Estate to Mrs. O'Connor as surviving spouse, with the other half to Decedent's surviving children, or issue.

4

(R.R. 60a.) These rights of Mrs. O'Connor and Decedent's children to share in the Estate of Decedent vested at the time of Decedent's death:

> The rights of distributees of the personal property of an intestate vest immediately upon his death, subject only to the satisfaction of debts and charges, and administration according to law. If an administrator is appointed, he holds the legal title, but in trust for the purpose of administering the estate. The rights of the distributees are fixed at the instant of death. This is the clear and undeviating doctrine of all our cases.

*In re Brothers' Estate*, 40 A.2d 156, 157 (Pa. Super. 1944) (en banc).

Under Section 2116(c) of the Act, any intestate heir, in this case Mrs. O'Connor and Decedent's surviving children, may renounce his or her interest in an estate. In such event, the inheritance tax obligation of the estate would be calculated as if the remaining heirs were the original and sole intestate heirs of the Estate. Section 2116(c) of the Act provides, in relevant part:

> When any person entitled to a distributive share of an estate, whether under an inter vivos trust, a will or the intestate law, renounces his right to receive the distributive share receiving therefor no consideration, . . . the tax shall be computed as though the persons who benefit by such renunciation . . . were originally designated to be the distributees, conditioned upon an adjudication or decree of distribution expressly confirming distribution to such distributees.

We must determine whether the Orphans' Court erred in holding that Decedent's surviving children failed to file a timely renunciation of their intestate shares of the Estate under Section 2116(c). If timely, then no inheritance tax is due, and Revenue's Appraisement must be set aside. If untimely, then Revenue's assessment of an inheritance tax on the children's intestate shares of the Estate was correct. As for timing of a renunciation, Section 2116(c) provides, in relevant part:

5

> The renunciation shall be made within nine months after the death of the decedent. . . . When an unconditional vesting of a *future interest* does not occur at the decedent's death, the renunciation specified in this subsection of the *future interest* may be made within three months after the occurrence of the event or contingency which resolves the vesting of the interest in possession and enjoyment.

(Emphasis added.) It is undisputed that the surviving children did not file their renunciations (the disclaimers) within nine months of Decedent's death. The only legal question is whether the "future interest" exception to the general nine-month time period, quoted above, applies in this case.

In sustaining Revenue's preliminary objections, the Orphans' Court held that the renunciations in this matter should have been filed within nine months of November 18, 2008, Decedent's date of death. Because the children did not file them until May 14, 2014, they were untimely. With respect to the "future interest" exception, the Orphans' Court opined:

> The Court acknowledges the exception to the nine-month filing requirement for disclaimers that deals with unconditional vesting of a future interest; however, said exception does not apply to this matter, as the Court accepts [Revenue's] argument that intestate shares vest in the heirs at the decedent's date of death, regardless of appraisement. Accordingly, as [Revenue] argues, the right to pursue a wrongful death/survival action in this case vested on the Decedent's date of death, and as a result, the settlement cannot be considered a future interest.

(Orphans' Court July 30, 2015 Order). In challenging this ruling on appeal, the Estate contends that the unliquidated survival claim was a "future interest" that the children were not required to disclaim until the claim became liquidated—*i.e.*, when the parties to the litigation settled and the amount apportioned to the survival claim became certain. Because the children filed their renunciations within three

6

months thereof, the renunciations were timely. The Estate contends that, as a taxing statute, Section 2116 of the Act must be strictly construed against the government and in favor of the taxpayer. *See* Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928(b)(3); *Estate of Carlson*, 388 A.2d 726 (Pa. 1978) (applying strict construction to inheritance tax statute). Like the Orphans' Court, we reject the Estate's legal argument.

Section 2102 of the Act includes the following definition of "future interest": "Includes a *successive life interest* and a *successive interest for a term certain.*" (Emphasis added.) The Estate contends that this definition leaves room for types of future interests other than "the 'usual.'" (Estate Br. at 16.) In *Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962 (Pa. 2014) (*Cumberland Coal*), the Pennsylvania Supreme Court held:

> [T]he presence of such a term as "including" in a definition exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature.

*Cumberland Coal*, 102 A.3d at 976. Applying this holding here, interests of the same class or nature as a successive life interest or a successive interest for a term certain can also be considered "future interests" for purposes of the Act. The Estate, however, fails to explain how the Estate's unliquidated civil damages claim is of the same class or nature as a successive life interest or a successive interest for a term certain.

A future interest is a *present* property interest, but with no immediate right to possession and enjoyment, as explained in Black's Law Dictionary's definition of future interest:

> A *property interest* in which the privilege of possession or of other enjoyment is future and not present. • A future interest can exist in either the grantor (as with a reversion) or the grantee (as with a remainder or executory interest). . . .
>
> > "The interest is an *existing interest* from the time of its creation, and is looked upon as a part of the total ownership of the land or other thing [that] is its subject matter. In that sense, future interest is somewhat misleading, and it is applied only to indicate that the possession or enjoyment of the subject matter is to take place in the future." Lewis M. Simes & Allan F. Smith, *The Law of Future Interests* § 1, at 2-3 (2d ed. 1956).
> >
> > "To own a future interest *now* means only to be entitled now to judicial protection of one's possible future possession, but also (in most cases) to be able to make transfers now of that right of possible future possession." Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests* 56 (2d ed. 1984). "When O transfers today 'to A for five years,' we can say *either* that O has a future interest *or* that he has a 'present' estate subject to a term for years in A. Similarly, when O transfers today his entire estate in fee simple absolute by a conveyance 'to A for five years, then to B and his heirs,' we can say *either* that B has a future interest *or* that he has a 'present' estate subject to a term for years in A. . . ." *Id.* at 42.

Black's Law Dictionary 885 (9th ed. 2009) (first and second emphasis added). Decedent's surviving children's property right to the unliquidated proceeds of the

survival action would have to have been, at the time of Decedent's death, secondary or inferior to another's then-present property interest in order to be considered a "future interest" under these definitions and constructs.

> Under Pennsylvania's Survival Act, 42 Pa. C.S. § 8302,
>
> survival damages are essentially those for pain and suffering endured by the decedent between the time of injury and death. The survival action has its genesis in the decedent's injury, not his death and, as such, the recovery of damages stems from the rights of action possessed by the decedent at the time of death.

*Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015) (internal citation omitted), *appeal granted in part*, 130 A.3d 1283 (Pa. 2016). Upon death, the right to pursue the survival claim and recover proceeds therefrom vested in Decedent's Estate.

Section 2116(c) of the Act provides for the renunciation of a "distributive share of an estate," not a particular estate asset or claim. Section 2102 of the Act, 72 P.S. § 9102, defines "estate" as encompassing all property of the decedent as a unified whole. Decedent died intestate—*i.e.*, without a will or other instrument designating to whom, how, and for how long the assets of his estate should be distributed. As a result, these questions (to whom, how, and for how long) are resolved not by a written instrument, but by statute. As noted above, immediately upon Decedent's death, the Code vested within Decedent's surviving children a present, *not future*, right to share equally in one-half of Decedent's estate. In other words, at date of death, each child's "distributive share" of Decedent's estate (one-half of one-half) was ascertainable and certain, although the value of that distributive share was uncertain. The settlement of the wrongful death and survival action did not at all affect the children's statutory distributive share of the Estate. The children's one-half distributive share of the Estate was the

9

same on Decedent's date of death as it was when the children filed their renunciations. In other words, the children's interest at date of death was not "successive" of anyone else's interest—*i.e.*, it was not delayed in time by another interest in the same property. Success with the wrongful death and survival action was a contingency that had the potential to alter the *value* of the children's distributive share, but it could not alter their statutorily-established entitlement to half of the Estate.[3]

This is well-settled law. *See In re Buckland's Estate*, 86 A. 1098, 1100 (Pa. 1913). In its brief, the Estate attempts to avoid the Pennsylvania Supreme Court's binding statement of law in *Buckland's Estate*, which like this matter involved a challenge to an appraisement of inheritance tax due, by distinguishing the case on its facts. The factual distinctions, however, have no bearing on the value and binding nature of the Supreme Court's pronouncement:

> [I]f the wife had died intestate, the quantum of the share or interest of the husband under the act of 1909 would have immediately vested by operation of law. The procedure to appraise and set apart is but a means to an end in ascertaining the value of the property which the husband has the right to take under the act, but it in no way interferes with the interest which vested in him immediately upon the death of his wife.

*Buckland's Estate*, 86 A. at 1100. Like the law in effect when the Supreme Court decided *Buckland's Estate*, the law in effect today, particularly Chapter 21 of the

---

[3] It is difficult to envision a circumstance where a future interest could ever arise where the decedent dies intestate. The creation of such a future interest requires some affirmative act by the grantor, in this case the Decedent. That Decedent died intestate precludes any finding that Decedent intended to structure the distribution of his property interests in such a way as to convey to his children any *future* interest in lieu of their statutory interest under the Code.

Code, provides that the children's rights as distributees of the Estate vested upon Decedent's death. The Administratrix's pursuit of the Estate's survival claim, successful settlement thereof, and filing of the verified inventory were means to an end in ascertaining the value of the Estate, a portion of which the children had a right to take under the Code. Those efforts, however, in no way interfered with the children's interest, which vested in them immediately upon the death of their father.

Accordingly, the Estate's unliquidated survival claim was not a "future interest" of Decedent's children at the time of Decedent's death, such that the children could delay their renunciation of their distributive share of Decedent's Estate beyond nine months after Decedent's death. The children's eventual renunciation being untimely, the trial court did not err in sustaining Revenue's preliminary objection to the portion of the Appraisement that assessed inheritance tax on Decedent's surviving children's intestate share of Decedent's Estate. We, therefore, affirm.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Estate of William A.     :
O'Connor, Jr., Deceased     :
     :
Appeal of: Judith O'Connor,     :     No. 2119 C.D. 2015
Administratrix of the Estate of William  :
A. O'Connor, Jr., Deceased     :

# O R D E R

AND NOW, this 8th day of June, 2016, the July 30 and October 5, 2015 orders of the Court of Common Pleas of Westmoreland County, Orphans' Court Division are AFFIRMED.

---

P. KEVIN BROBSON, Judge